Atchison, Topeka & Santa Fe Railway Company v. W. H. Williams et al.

Decided March 4, 1905.

**1.—Railroads—Venue—Connecting Carriers.**

Where suit against several railroads for damages to freight, occurring in a through shipment, is brought in a county through which only one of the roads extends, the fact that, on the trial, judgment is rendered in favor of such latter road does not of itself operate to defeat the jurisdiction as to another road against which judgment is rendered, and does not establish that the road so held not liable was fraudulently joined in the suit for the purpose of giving jurisdiction over the others.

**2.—Same—Jurisdiction—Plea of Privilege.**

In order to defeat the jurisdiction over the other roads there must be both pleading and proof that the road adjudged not liable was fraudulently joined in the suit for the sole purpose of giving jurisdiction over the other defendants.

**3.—Joint Liability—Pleading and Judgment.**

In such an action, brought under the Act of May 20, 1899, it is no objection to the judgment against one of the roads that plaintiff's petition did not allege the precise amount of damages done by each of the carriers engaged in the transportation.

**4.—Evidence—Weight of Cattle—Market Sales.**

In an action for damages to cattle shipped to market and sold there, proof of the weights at which they were sold may be made by showing their weights as entered up in the book of sales by the bookkeeper of the commission house that sold the cattle, without producing the man who weighed the cattle or the slips of paper on which the weights were endorsed by him and from which such bookkeeper entered up the weights.

**5.—Motion for New Trial—Error on Appeal—Waiver.**

Where a party himself requests the court to overrule his motion for a new trial, and this is accordingly done, he is not entitled to urge on appeal any ground of error necessary to be presented in a motion for new trial.

Appeal from the County Court of Midland. Tried below before Hon. L. M. Murphy.

*Ed. J. Hamner* and *J. W. Terry,* for appellant.—1. In order to maintain suit against a railroad company in a county through or into which it does not operate its road, it is necessary that some liability growing out of the contract of shipment sued on shall exist against a connecting

carrier in the shipment which operates its line of railroad in the county where the suit is brought. Railroad v Lynch, 75 S. W. Rep., 486; Railroad v. Forbis, 79 S. W. Rep., 1074.

2. A bookkeeper of a commission house can not testify as to the prices at which cattle were sold by that commission house, and the weights of such cattle, simply because the same were recorded by him in books correctly kept, when such bookkeeper did not see the cattle weighed nor sold, and was not present when such cattle were weighed or sold, and only knows what they weighed or for what sold by information furnished him by the parties who sold and weighed the cattle.

*Hawkins & Isaacs,* for appellees.—The fact that appellee failed to recover against some of the defendants is no evidence of the fact that they were made parties for the fraudulent purpose of conferring jurisdiction upon the court. The question of jurisdiction is determined by the face of the pleadings, in the absence of proof of fraudulent allegations to confer jurisdiction, and the burden of proof was on appellant to establish his plea of fraudulent allegations, which, as aforesaid, he failed to do. It is not necessary that each connecting carrier should, in fact, be liable, and that a jury should so find in each case, in order to determine the jurisdiction of the court, for in that event the question of jurisdiction could not be determined until the case had been fully tried and a verdict rendered.

CONNER, CHIEF JUSTICE.—Plaintiff instituted this suit on December 14, 1903, against the Texas & Pacific Railway Company, the Gulf, Colorado & Santa Fe Railway Company and appellant, for damages to a shipment of cattle made from Monahans, Texas, to Fort Worth, Texas, over the line of the Texas & Pacific Railway Company, and from Fort Worth, Texas, to South St. Joseph, Missouri, over the lines of the Gulf, Colorado & Santa Fe Railway Company and the appellant. The Texas & Pacific Railway Company pleaded general demurrer and general denial, and special answer, alleging a contract limiting its liability. The Gulf, Colorado & Santa Fe Railway Company pleaded its privilege, which was substantially the same as the plea of privilege filed by appellant, which said plea was by the court overruled. The appellant pleaded its privilege to be sued in El Paso, County, Texas, which was by the court overruled. The court, at the instance of the Texas & Pacific Railway Company and the Gulf, Colorado & Santa Fe Railway Company, gave special instruction to the jury to find for these companies, for the reason that there was no evidence showing any loss, negligence or damage accruing to plaintiff's cattle on their lines of railway, no objection to this action of the court being made by appellee nor by appellant. The trial resulted in a judgment for appellee against appellant for $450.03.

The principal contention in this case arises under the first and seventh assignments of error, complaining of the action of the court in refusing to sustain appellant's plea of privilege, as shown by its bill of exception number 1.

The shipment was a through one, and a joint liability was alleged. The facts show, as was alleged in the plea of privilege, that appellant

operates, under a lease approved by the Texas Railroad Commission, the railroad of the Rio Grante & El Paso Railway Company, extending from the boundary line of the State of Texas to El Paso, a distance of about twenty miles; appellant not otherwise owning or operating any railroad in Texas. The plea of privilege also alleged that the plaintiff had falsely and fraudulently joined in the suit the Texas & Pacific Railway Company for the sole and only purpose of giving jurisdiction over the person of appellant in Midland County. There was no affirmative proof of this averment of a fraudulent joinder, unless such may be inferred from the fact that the court gave the special instructions mentioned, and that the verdict and judgment was in favor of the Texas & Pacific Railway Company and the Gulf, Colorado & Santa Fe Railway Company. Appellant's proposition of error is, in substance, that jurisdiction over appellant in Midland County was defeated by the mere fact that no liability was shown against the Texas & Pacific Railway Company; it being appellant's further contention that the leasehold interest in the railroad of the Rio Grande & El Paso Railway Company, above mentioned, is not such ownership or interest as brings it within the terms of the Act of 1899.

We think the assignments and contentions above noted must be overruled. The Act, approved May 20, 1899 (Laws of 1899, page 214), providing the venue of suits against railroad companies, specifically declares that whenever any freight, baggage or other property has been transported over two or more railroads operating any part of their roads in this State, or operated by any assignee, trustee or receiver of any such railways, suit for loss or damages arising out of such transportation may be brought against any one or all of such railroads in any county in which either of such railroads extends or is operated. Under the facts of this case the Act mentioned seems to clearly confer the right to sue appellant in Midland County. To say the least of it, it is equally authoritative with the venue statute upon which appellant predicates its plea of privilege. It seems clear to us, upon the face of appellee's petition, that the court of Midland County had jurisdiction, and that, in order to defeat it, and for appellant to avail himself of the general provision of the statute conferring upon it the privilege of being sued in El Paso County, where it alleged in its plea of privilege it had an agent, it was necessary not only to allege, but to prove, that the Texas & Pacific Railway Company, whose line was operated through Midland County, was joined for the fraudulent purpose of giving jurisdiction. And we do not think that such proof is made by merely showing upon the final trial that liability, in fact, did not exist against the Texas & Pacific Railway Company. In this particular case the court instructed the jury to find for the Texas & Pacific and the Gulf, Colorado & Santa Fe Railway Companies, but no complaint is made of such instruction, and it may have been predicated upon circumstances not appearing, which entirely justified the instruction, and which also were entirely consistent with the allegation of appellee's petition that a liability, at the institution of the suit, did exist against the Texas & Pacific, and entirely consistent with appellee's good faith in making the averment.

In the case of Texas & Pacific Railway Company v. Stell (61 S. W. Rep., 980) this court held that, where a petition against two railway

companies alleged a partnership or joint liability, the plea of a nonresident defendant to the jurisdiction was properly overruled where it failed to charge fraud in the allegations of partnership and joint liability, citing a number of cases. If it be necessary, in order to exclude jurisdiction, that fraud in averments be charged in the plea of privilege, it necessarily follows that the averment in that particular must be proved, and we think this view consistent with numerous cases in which it has been held that, where the petition charges an amount within the jurisdiction of the court, to defeat the issue of jurisdiction thus presented on the ground that the real amount involved is below the jurisdiction of the court, it is necessary to allege and prove that the plaintiff in the suit alleged an excessive amount for the fraudulent purpose of conferring jurisdiction. In such cases it has been several times held that the mere fact that, on the trial, judgment was rendered for an amount below the jurisdiction of the court, did not defeat the jurisdiction.

The cases of Texas & Pacific Railway Co. v. Lynch (75 S. W. Rep., 486), and Atchison, Topeka & Santa Fe Railway Company v. Forbis (79 S. W. Rep., 1074), are cited by appellant in support of the contentions noted. We think these cases, however, are distinguishable. In the Forbis case, the railway company operated within the county of the suit was not sued, and no negligence was charged against it, and we held, upon the authority of the Lynch case, that the Act of 1899 did not apply. In the Lynch case, the Supreme Court construed the Act constituting the foundation of the cause of action as the separate, distinct wrong of the Texas & Pacific Railway Company, one for which the railway company operating its road in the county of the institution of the suit was in nowise responsible, and the court, in discussing the effect of the act of 1899, held that "It (the Act of 1899) was not intended to authorize a suit against two railway companies not acting under a joint contract for the distinctly separate wrong of one, merely because property had been transported over the connecting lines of the two." In the Case before us it is distinctly alleged in the petition that the shipment was a through one; that the contract for shipment had been made with the Texas & Pacific for itself and in behalf of its codefendants, including appellant, for such through shipment. Negligence and consequent damages against each of the defendants was as distinctly alleged, and prayer for the total damages against the defendants jointly and severally was made. So that the petition seems to have presented the precise case contemplated by the statute of 1899, as the purposes of that Act have been declared by the Supreme Court in the Lynch case, supra. We think all assignments involving the question of appellee's right to sue appellant in Midland County, and the jurisdiction of the court over appellant in that county, should be and are hereby overruled.

Under the third, fourth, fifth and sixth assignments, the appellant in various forms objects to the judgment, and to appellee's petition, because the precise amount of damage done by each of the carriers engaged in the transportation was not alleged nor shown. An inability to so do seems to have been the reason for the venue statute hereinbefore discussed. Say the Supreme Court in the Lynch case, supra, in discussing the Act of May 20, 1899: "Before the passage of the Act it was a mat-

ter of not infrequent occurrence that livestock which had been shipped over two or more lines of railroad under separate and independent contracts arrived at their destination in a damaged condition, and the shipper was at a loss to know how much of the damage was chargeable to the one line and how much to the other, or others, in case there were more than two. The evident purpose of the Act was to relieve shippers of this difficulty, and to provide a joint action against all of the carriers where there was a reasonable probability that each was responsible for some part of the whole damage." The Act, however, provides that the damages may be apportioned, the jury and court thus being enabled to find against one or all of the railway companies engaged in the transportation when authorized to so do by the averments and proof of negligence.

There is another question presented under the ninth and eleventh assignments of error that we will notice with some particularity because of its frequent recurrence before us. The bookkeeper, in the commission house at the point of destination selling appellee's cattle, was permitted to testify to the prices and weights of the cattle as shown by his books, and he attached to his deposition a copy of the account sales showing such weights and prices. The prices at which the cattle were sold appear to have been established by the testimony of the salesman in exact accord with the price as shown in the account sales, but objection is made to the account sales, because the weights of the cattle were not established by the person who actually weighed them. The facts, however, show that in making sales the custom was for the weigher to endorse the weights of the cattle weighed upon slips of paper, which were, during the regular course of business, delivered to the bookkeeper, and such weights were then entered upon the books. The bookkeeper testified that his books were correctly kept, and that the weights and prices shown in the account sales were correct as shown by his books. It was further shown that the person who did the actual weighing could not be found, he being no longer in the employ of the commission house selling the cattle. We feel no hesitation in saying that the account sales was admissible. It is common knowledge that in the cattle markets of the country great numbers of cattle are constantly and daily sold, and it could certainly not be expected that those who weigh them would be prepared to testify as to the separate weights of the cattle weighed by them. The slips upon which these weights were endorsed at the time are evidently not intended to be for preservation, and when, as shown here to have been the case, they are made at the time and presented in regular course of the business to the person whose duty it is to enter such weights upon a book for preservation in an enduring form, we do not think such slips constitute the best evidence, at least, neither the slips nor the person who did the actual weighing are essential in the establishment of the weights. The weights and prices, as preserved by the clerk or officer making the official entries, are accepted by the parties at the time as correct, and are acted upon by them in the settlement of the transaction. We think such final book entries fall within the reason of the rule as laid down by Mr. Greenleaf, in his work on Evidence, volume 1, sections 115 and 117. And such, in effect, is the ruling of the Kansas City Court of Appeals, in the case of Drumm-Flato Com. Co. v. Gerlach Bank (81 S. W. Rep., 503).

Under the eighteenth, twenty-third, sixteenth and thirteenth assignments of error, objection is made to the charge of the court on the measure of damage, and that the motion for new trial should have been granted, because the verdict of the jury is excessive; and that the witness Voliva was permitted to give alleged incompetent testimony. These assignments all relate to the question of damages and to the amount thereof, and we think should be overruled on the ground that the motion for new trial, as shown by the transcript in this case, was overruled upon the special request of counsel representing appellant. The order recites the coming on of the motion for a new trial, and that the attorney for the defendants wished said motion overruled, "he having stated in open court that it was the wish and request of defendants that said motion should be overruled." The motion was thereupon overruled, and we think the order shows, as a whole, that the court acted upon the request. We must take the record as presented to us as true, and appellant therefore can not be entitled to a new trial upon any ground necessary to be presented in a motion therefor.

There are several other assignments, but we regard them as not entitled to discussion, and they are therefore overruled without further notice. No reversible error having been shown, it is ordered that the judgment be in all things affirmed.

*Affirmed.*